

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 9, 2020

**BY ECF**

The Honorable Vernon S. Broderick
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Ruben Morciglio*, S2 18 Cr. 873 (VSB)

Dear Judge Broderick:

    The Government submits this letter in advance of the sentencing of Ruben Morciglio ("Morciglio" or the "defendant") in the above-referenced matter, currently scheduled for October 16, 2020 at 10:00 a.m. Morciglio trafficked three minor females: a 15-year-old victim, a 14-year-old victim, and a 12- or 13-year-old victim. He treated the victims as his property, forcing them to engage in prostitution so that he could make money. He used extreme force to maintain control over them, on one occasion striking a victim so hard that he ruptured her eardrum. He caused these minor victims, now young women, irreversible trauma. They continue to carry the scars with them today. Because of the violent nature of his conduct, the exceptional vulnerability of his very young victims, and the tremendous harm that the defendant inflicted upon them, the Government submits that a sentence within the Guidelines Range of 360 months to life is necessary and appropriate.

**A. Background**

    On December 11, 2018, a Grand Jury sitting in the Southern District of New York returned an indictment, 18 Cr. 873 (VSB), charging Ruben Morciglio and his co-defendant, Carlton Vanier ("Vanier"), in five counts relating to their sex trafficking of minors (ECF No. 1, the "Indictment"). Specifically, Count One charged Morciglio with conspiring to traffic minor girls for sex, including at least one minor victim who was, at various points, a resident of a treatment facility for troubled youth ("Facility-1"), in violation of Title 18, United States Code, Section 1594(c). Counts Two and Four charged Morciglio with substantive counts of sex trafficking of a minor by force, threats of force, fraud, and coercion. On December 12, 2018, Morciglio was arrested and the Indictment unsealed. Morciglio has been detained since that date.

    On December 20, 2019, the defended pled guilty, pursuant to a plea agreement with the Government (the "Plea Agreement"), to one count of sex trafficking of a minor and two counts of participating in two separate sex trafficking conspiracies, as charged in a superseding information, S2 18 Cr. 873 (VSB) (ECF No. 30, the "Superseding Information"). The Superseding Information charged Morciglio (i) in Count One, with sex trafficking a then 15 year-old minor victim ("Minor

Victim-1") in or about the Summer of 2016, in violation of Title 18, United States Code, Sections 1591(a), (b)(2), and 2; (ii) in Count Two, participating in a sex trafficking conspiracy, including by using force, threats of force, fraud, or coercion, relating to a minor victim who was then approximately 12 or 13 years old ("Minor Victim-2") in or about 2010, in violation of Title 18, United States Code, Section 1594(c); and (iii) in Count Three, participating in a sex trafficking conspiracy, including by using force, threats of force, fraud, or coercion, relating to a minor victim who was then approximately 14 years old ("Minor Victim-3"), in or about the Fall of 2017, in violation of Title 18, United States Code, Section 1594(c).[1]

The parties stipulated in the Plea Agreement that the applicable Guidelines range was 360 months to life imprisonment, with a mandatory minimum term of 120 months' imprisonment (the "Stipulated Guidelines Range"). In the Final Presentence Report, dated March 11, 2020 (the "PSR"), the United States Probation Office ("Probation") recommended a sentence of 360 months' imprisonment.

**B. Offense Conduct**

As set forth in the PSR, the defendant violently sex trafficked three minor victims, Minor Victim-1, Minor Victim-2, and Minor Victim-3 (together, the "Victims").

Beginning in approximately 2010 or 2011, the defendant trafficked Minor Victim-2, when she was only 12 or 13 years old. Minor Victim-2 engaged in prostitution for the defendant's benefit for a period of months, during which he advertised her online for commercial sex services, including on Backpage.com, a website used to advertise women and girls for prostitution until it was taken down by the Federal Bureau of Investigation in or about the spring of 2018. Minor Victim-2 also engaged in commercial sex acts in various hotel rooms rented by the defendant. Minor Victim-2 stated that the defendant was very violent with her. (*See* PSR ¶ 15).

That was not the end of the defendant's trafficking of Minor Victim-2. Several years later, in approximately the fall of 2018, Minor Victim-2, by then an adult, again encountered the defendant. Minor Victim-2 engaged in commercial sex acts on behalf of Morciglio, as well as his co-defendant Vanier. During this time, the defendant and Vanier forced Minor Victim-2 to read books about pimping, listen to pimp-related music, and watch pimp-related YouTube videos. (*See* PSR ¶¶ 16-17).

The defendant also trafficked Minor Victim-1 beginning in 2016 or 2017. Minor Victim-1 was then approximately 15 years old and living in the foster care system when she began engaging in commercial sex acts for the defendant. The defendant's trafficking of Minor Victim-1 began approximately one week after they met. Soon after they met, Minor Victim-1 told the defendant she wanted to leave, to which he replied, "you can't leave, you have to make money." In other words, Morciglio forced her to have sex with men to make him money and then proceeded to physically abuse her. During this initial period, she made approximately $1,000 for Morciglio.

---

[1] The references to victims in this submission correspond to those in the Superseding Information and PSR. Minor Victim-1 was identified as Victim-2 in the Indictment. The conduct relating to Minor Victim-2 was contemplated by Count One of the Indictment, relating to sex trafficking conspiracy, but Minor Victim-2 was not identified specifically in the Indictment.

Minor Victim-1 then left the defendant for a period of time.  But Morciglio tracked her down, contacting her via Facebook, and saying, again, "you need to make money."  Minor Victim-1 then returned to work for the defendant for approximately two to three months, during which he kept all of the money that she earned from commercial sex acts. (*See* PSR ¶ 14).

The defendant also trafficked Minor Victim-3 during approximately the fall of 2017.  Minor Victim-3's story mirrors that of Minor Victim-1 and Minor Victim-2.  The defendant trafficked Minor Victim-3 using frequent violence—including sexual violence.  During the period in which she worked for the defendant, Minor Victim-3 saw approximately ten customers per day—men paying to have sex with a 14 year-old girl.  All of the proceeds went to the defendant.  He beat her constantly, including when Minor Victim-3 did something "wrong," such as "being rude" to a customer.  The defendant choked, punched, and slapped Minor Victim-3, including at least one instance in which the defendant struck Minor Victim-3 so hard that he caused Minor Victim-3's eardrum to pop.  (*See* PSR ¶ 18).  Minor Victim-3 has described in detail the atrocities inflicted on her by the defendant.  In a letter to the Court in connection with the defendant's sentencing, Minor Victim-3 wrote the following, in part:

> "I was physically, mentally and emotionally abused … for 5 months I was beaten and [] raped, and I was a young girl.  I was held against my will, being told when I could leave and where I could go.  I was scared to contact my mom or [w]hen [the defendant] would let me contact my mom, he would supervise.  He would also threaten me if I told anyone my situation, there were times I feared for my life, waking up with guns in my face, just to make me do the most horrible things to make him money.  The money [the defendant] made from the things he made me do was used to buy himself drugs.  When I would find a chance to run away I would.  But he would end up finding me and chase me until I could not run anymore and would physically make me go back with him."

(*See* PSR ¶ 22).

## C.  Probation's Recommendation and the Defendant's Submission

Probation calculated that the defendant has a total offense level of 40 and is in criminal history category of V, resulting in a guidelines range of 360 months' to life imprisonment.[2]  (PSR at 25).  Probation recommends a sentence of 360 months' imprisonment, which is within the Stipulated Guidelines Range.  (*Id.* at 27-30).  Probation supports its recommendation with the following assessment of the defendant's conduct:

---

[2] Probation found that the defendant has accrued 11 criminal history points, and, accordingly, is within Criminal History Category V.  The Plea Agreement determined that the defendant had seven criminal history points, and was thus within Criminal History Category IV.  Specifically, Probation correctly assigned three criminal history points to the defendant's 2010 conviction for robbery in the second degree and added two criminal history points history points because the defendant was under a criminal justice sentence when committing the instant offense, pursuant to U.S.S.G. § 4A1.1(d).  The Government stands by the Plea Agreement and seeks a sentence within the Stipulated Guidelines Range.  (Regardless of whether the defendant is in Criminal History Category IV or V, the Guidelines range at total offense level 40 remains 360 months' to life imprisonment.)

>   Morciglio viewed the victims as property and as a business transaction while ignoring that they are human beings. He also used severe physical violence and threats of violence against the victims. The damage to the victims caused by Morciglio cannot be undone and warrants a significant punishment. Further, his criminal history includes violence and neither lenient, nor punitive sentences have served as a deterrent.

(*Id.*) Accordingly, Probation finds that "[w]hen considering the factors noted above and the need to address deterrence, just punishment, respect for the law, and protection of the community, we respectfully recommend and believe that a sentence of 360 months' imprisonment is sufficient but not greater than necessary." (*Id.*)

The defendant's submission requests that this Court sentence the defendant to 120 months' imprisonment. (Def. Mem. at 1). In support of this request for a significant downward variance, the defendant's submission cites, among other factors, the significant adverse circumstances of the defendant's childhood—including sexual assault, domestic violence, and physical trauma—and argues that a sentence within the Stipulated Guidelines Range would result in a sentencing disparity with sentences received by other defendants charged as part of this investigation. (*See* Def. Mem. at 2, 10-12).

### D. Applicable Law

As the Court is aware, the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, Your Honor must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

### E. Discussion

The Government respectfully submits that the seriousness of the offense, the need to promote respect for the law, ensure just punishment, protect the public, and afford adequate deterrence, all warrant imposition of a sentence within the Stipulated Guidelines Range of 360 months to life imprisonment. The Government recognizes the significance of such a sentence, and this request, as with the similar request in the case of the co-defendant Vanier (*see* ECF No. 58, Gov't Vanier Sentencing Submission), is made only after careful consideration of the sentencing factors discussed below. In the Government's view, this requested sentence is severe, but it is warranted and necessitated by the egregiousness of the offense conduct.

Morciglio, like Vanier, ruined the lives of multiple young girls. He found vulnerable children, brought them under his control, and used extreme violence and manipulation to maximize his personal financial gain. As Probation described, Morciglio "ignor[ed] that the [victims] are human beings." Morciglio did not care that they were humans, that they were children, or that

they were vulnerable—except to the extent that it made them easier to exploit.  When certain of the Victims tried to leave the defendant, he found them, threatened them, and forced them back to work; to make money for him by having sex with any paying customer.  The defendant's conduct, the need to deter both him and others from engaging in similar conduct, and the need to protect the community, warrant such a sentence.

   1.  *Seriousness of the Offense and Respect for the Law, and Just Punishment*

The sexual exploitation of children is among the most serious of offenses.  Morciglio victimized some of the most vulnerable members of our society for money—teenagers, or younger, who had, at various points, been in-and-out of the foster care system.  He trafficked children who were 15, 14, and 12 or 13 years old, using extreme, sometimes sexual, violence.  The defendant's oldest victim was barely old enough for high school; his youngest victim should have been in middle school.

Characterizing the defendant's actions simply as "violent" fails to capture the scope and duration of his horrendous conduct.  He was motivated by profit, so that he could buy himself things like drugs.  He controlled and brutalized the Victims, forcing them into the degrading business of commercial sex, so that he could, and did, commandeer and live off of their proceeds.  While the defendant's aim may have been to make money, his frequent use of violence suggests that he also was motivated to control his victims.

For example, he, along with Vanier, participated in the perverse "reeducation" of Minor Victim-2, several years after Morciglio (and Vanier) had first trafficked her, forcing Minor Victim-2 to read books about pimping, listen to pimp-related music, and watch pimp-related YouTube videos.  Morciglio and Vanier psychologically—and physically—traumatized Minor Victim-2, whom they had first trafficked when she was approximately 12 or 13 years old and whom the defendant forced back into his employ years later.  Morciglio followed the same pattern with respect to Minor Victim-1 and Minor Victim-3: forcing them to work, using violence, and, if they tried to leave, hunting down the victims and forcing them back to "make money" for him.  As recounted by Minor Victim-3 and summarized in the PSR, the defendant raped, abused, and forced a 14 year-old girl to have sex so that he could buy drugs; if she left, he chased her down.  His control was complete: he even supervised visits with Minor Victim-3's mother.  The PSR states, accurately, that the defendant treated the Victims as "property."  But the control he exerted over the Victims, particularly in the vivid, heartbreaking terms described by Minor Victim-3, goes beyond reducing the Victims to assets in a business transaction—which would be bad enough—and to something even more degrading and sinister.

As noted in the PSR, the investigation that led to this prosecution began when the FBI's Child Exploitation and Human Trafficking Force received a tip from a non-profit organization about trafficking of minor victims—many of whom were residing, or had previously resided, at Facility-1.  (PSR ¶ 10).  Ultimately, the investigation has led to the prosecution of 19 individuals for sex trafficking offenses, each of whom has been convicted either by entering into a plea agreement or following trial.  Even among this group of 19 defendants, the defendant's—and Vanier's, as described in the Government's sentencing submission (*see* ECF No. 58)—conduct stands out as particularly violent, exploitative, and horrendous.  None of these defendants trafficked victims who were as young as Minor Victim-2 or used force and manipulation on the

same scale as Morciglio and Vanier. The Stipulated Guidelines Range here reflects that this defendant's conduct, even among some similarly situated defendants, stands out because of his violence and the particular vulnerability of his victims.[3] Such a sentence would not, as the defendant's submission argues, result in an unwarranted sentencing disparity.

What distinguishes the defendant is the perversion and extreme violence that animates his conduct. That the defendant would violently traffic minor victims is itself atrocious conduct; that he would seek them out, threaten them, and force them back to work for him after they escaped and/or left, clearly is indicative of a disturbing *modus operandi*, and betrays a fundamental lack of basic humanity, much less even the bare minimum of remorse or compassion. As Minor Victim-3 put it, "[w]hen I would find a chance to run away I would. But he would end up finding me and chase me until I could not run anymore and would physically make me go back with him." (PSR ¶ 22). He was, in short, a violent predator.

---

[3] Eight defendants have already been sentenced, including far less culpable defendants who assisted or facilitated other defendants' exploitation of minor girls and who pled to conspiracy to violate the Travel Act, in violation of Title 18, United States Code, Section 371. This group includes: Ruben Sands, who was sentenced to 60 months' imprisonment in *United States v. Sean Merchant, et al.*, 18 Cr. 527 (KMW); Christopher Bullock, Dariel Braham, and Adrienne Roberts, sentenced to 54, 48, and 48 months' imprisonment, respectively, in *United States v. Hubert Dupigny, et al.*, 18 Cr. 528 (JMF); and Cimmie Wright, who was sentenced to 51 months' imprisonment in *United States v. Jabari Kennedy, et al.*, 18 Cr. 529 (JFK). It also includes Lawrence Walsh, who was sentenced after the time of the defendant's submission. *See United States v. Lawrence Walsh*, S1 18 Cr. 874 (JSR). Walsh entered into a cooperation agreement and testified as a Government witness at trial against his co-defendant, Luidji Benjamin. Walsh received a sentence of time-served after serving approximately 19 months' imprisonment.

Other sentenced defendants who actively trafficked minors used substantially less or no violence, like Jermaine Myrie, sentenced to 135 months' imprisonment after pleading guilty to a single count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), or Luidji Benjamin, sentenced to 204 months' imprisonment after being convicted at trial of one count of sex trafficking of a minor, in violation of Title 18, United States Code, Section 1591(b)(2), and one count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c). *See United States v. Jermaine Myrie*, S3 18 Cr. 527 (KMW); *see United States v. Luidji Benjamin*, 18 Cr. 874 (JSR).

The defendant's conduct is comparable, though significantly more violent, to defendants who have yet to be sentenced, including: Lloyd Kidd, who was convicted at trial of sex trafficking and production of child pornography offenses, *see United States v. Lloyd Kidd*, S2 18 Cr. 872 (VM); Hubert Dupigny, who was convicted at trial of sex trafficking offenses, *see United States v. Hubert Dupigny*, S1 18 Cr. 528 (JMF); as well as other defendants, who pled guilty to substantive counts of sex trafficking minors, including Sean Merchant, *see United States v. Sean Merchant*, S4 18 Cr. 527 (KMW), and Steven Lesane, *see United States v. Steven Lesane*, S7 18 Cr. 527 (KMW). Nevertheless, the defendant's Stipulated Guidelines Range exceeds that of other similarly situated defendants, such as Sean Merchant (235 to 293 months' imprisonment) and Steven Lesane (210 to 262 months' imprisonment).

The defense's sentencing submission describes the violent, tragic circumstances of his childhood. In particular, as set out both in the defendant's submission and the mitigation report attached thereto (Ex. A), the Government acknowledges that the defendant was a victim of, and witness to, sexual and domestic violence during his childhood, that he suffered head trauma as a young child, and a diagnostic history that includes bipolar disorder, post-traumatic stress disorder, and schizophrenia. The Government also credits the defendant for his acceptance of responsibility, especially in view of the fact that a life sentence is within the Stipulated Guidelines Range. His acceptance of responsibility has spared his victims the further trauma of having to testify and relive their abuse at a trial.

The Government does not doubt that the defendant suffered in his own life. Unfortunately, and equally tragically, he then inflicted some of the very same abuse on his victims. The defendant's conduct was so heinous that these mitigating factors simply are outweighed by the gravity of the offense conduct. That the defendant's "first memory is of walking into his mother's bedroom and seeing his mother yielding sexually to his abuse father" (Def. Submission, Ex. A at 22) is horrific; however, that neither excuses nor mitigates that Morciglio raped and trafficked, and physically abused Minor Victim-3. The same is true of the defendant's vicious conduct toward Minor Victim-1 and Minor Victim-2. The defendant's submission may be correct in its description of a cycle of abuse and neglect, whereby those who suffer as children, in turn, exhibit similar behavior as adults. Here, however, we are left with the reality of an adult man who has perpetrated unspeakable harm. Regardless of the underlying reason, conscripting minor girls into prostitution, hunting them down when they leave, and forcibly putting them back to work, is so egregious that a correspondingly serious sanction is required.

Moreover, viewing the defendant's conduct as a *fait accompli* would unreasonably strip him of his agency in, repeatedly, engaging in this conduct as an adult. Minor Victim-3 suffered as a child, just as the defendant did, but writes, in part, "What I want your honor and [the defendant] to know is that I am a survivor. I am not [the defendant]'s victim anymore. I am doing great moving on with my life. I am a young independent, smart, beautiful, and strong woman. My past will not define me." (PSR ¶ 21). Minor Victim-3's past abuse at the defendant's hands will not define her. Neither should the defendant's past—while admittedly horrific—absolve him.

The defendant's role, the extent of the harm he imposed on these vulnerable victims, and the seriousness of the offense are all appropriately addressed and accounted for in the Guidelines calculation. Accordingly, a sentence within the Stipulated Guidelines Range of 360 months to life imprisonment would be just and proper here.

### 2. *The Need to Protect the Public and Deter the Defendant and Other Similarly Situated Individuals*

The defendant's criminal history is also a significant, aggravating factor. The defendant has a long record of violent offenses and repeated instances of abusive treatment of women. His record also shows a pattern of disobeying law enforcement, violating the terms of his probation and/or parole, and escalating criminal conduct despite repeated interactions with the criminal justice system. As Probation stated in the PSR, "neither lenient, nor punitive sentences have served as a deterrent." (PSR at 29). The need to deter the defendant, and the need to protect the public from him, both favor imposition of a sentence within the Stipulated Guidelines Range.

Beginning as early as 2004, when the defendant was 16, he was convicted of robbery in the first degree. Acting with two others, he struck a victim on his head, with a large piece of wood, causing serious physical injury, to take the victim's property. (PSR ¶ 60). The defendant was only 16 years old, and adjudicated a youthful offender. His conduct, even at such a young age, shows a troubling willingness to use violence to take from those weaker than him, and to use extreme force against such victims.

Again in 2010, the defendant was convicted of robbery in the second degree. As set forth in the PSR, the defendant was alleged to have "approached the victim with his hand inside his shirt acting like he had a gun and said 'don't move, I have a gun, I will shoot you'." (PSR ¶ 64). The defendant's prior interaction with law enforcement did not deter him from victimizing other individuals. If anything, the defendant's methods became only more sophisticated, as he was able to deploy the threat of violence against a victim to take what he wanted.

Yet again in 2016, for example, the defendant was convicted for harassment in the second degree. While this resulted in a relatively short, 15-day prison term, the underlying conduct further demonstrates the defendant's pattern of using violence and mistreating women. As set forth in the PSR, according to the relevant misdemeanor complaint, the defendant made numerous telephone calls to the complainant ("CV-1"), identified as the mother of the defendant's son, during which he stated, among other things, "you're going to make me kill you, you stupid bitch" and "I'm gonna [sic] fuck you up real bad." (PSR ¶ 66). Indeed, between 2015 and 2017, six orders of protection were issued against the defendant, four of which related to CV-1.

These offenses reflect that the defendant did not hesitate to use violent and threatening conduct. Relevant too is the fact that the offense conduct in the present case spanned this timeline of activity. The defendant's exploitation of minor victims continued in the backdrop of these criminal cases and the defendant demonstrated himself to be totally undeterred by the convictions in these cases, resorting again and again to the trafficking of minor victims.

In addition to a troubling pattern of threatening and using force, particularly against women, the defendant's criminal history also demonstrates a pattern of non-compliance with the law or defiance as to the authority of the courts including a 2010 conviction for bail jumping. (PSR ¶ 65).

The defendant was sentenced to substantial prison terms for some of those offenses. Yet, those sentences did nothing to deter the defendant from committing the instant offense, which is the most serious in his long criminal history. The defendant has demonstrated that he poses a real and escalating danger to the community and those vulnerable within it. The defendant stopped profiting from commercial sex only with his December 2018 arrest. This investigation has showed that the only way to protect the community, particularly *vulnerable* members of the community, from the defendant's crimes, is incapacitation. That is the only way future victims will be prevented from suffering at the defendant's hands. Accordingly, a substantial sentence is necessary to deter the defendant and to protect the public from future crimes by this defendant.

Moreover, there also is a stark need for general deterrence in this case, as the offense involved the victimization of some of the most vulnerable members of society. A substantial sentence of incarceration within the Stipulated Guidelines Range would send a powerful message

to others who might seek to victimize minors that such actions will not be taken lightly.  A period of incarceration of 360 months to life imprisonment would demonstrate that those who victimize children—*especially* vulnerable ones from the foster care system—will be held accountable for the incalculable pain that they impose on their victims.

**F.  Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 360 months to life imprisonment.  Such a sentence would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

               Respectfully submitted,

               AUDREY STRAUSS
               Acting United States Attorney

By:  _____/s/_____
      Mollie Bracewell
      Elinor Tarlow
      Jacob Gutwillig
      Assistant United States Attorneys
      (212) 637-2218/1036/2215